UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MITCHELL D. PUGH,

        Plaintiff,                      Case No. 1:06-cv-138

v.                                       Honorable Paul L. Maloney

PATRICIA CARUSO et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983 and 2000cc-1.  On June 8, 2007, this Court ordered service of Plaintiff's complaint on Defendants Patricia Caruso, James Armstrong, Blaine Lafler, Julius Mayfield, Daniel Abrams[1] and Carron Caldwell.  On August 2, 2007, Defendants Caruso, Lafler and Mayfield filed a motion for summary judgment (docket # 25) on the ground that Plaintiff failed to exhaust his available administrative remedies.  Plaintiff filed a response and attachments (docket # 51) on or about October 15, 2007. Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted in part and denied in part.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

---

[1] Defendant Abrams has not yet been served in this action.

Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit

repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Muskegon Correctional Facility, though the actions he complains of occurred while he was housed at the St. Louis Correctional Facility (SLF). In his *pro se* complaint, Plaintiff sues MDOC Director Patricia Caruso and MDOC Prison Affairs Manager James Armstrong, together with the following SLF employees: Warden Blaine Lafler, Classification Director Julius Mayfield, Grievance Coordinator Daniel Abrams and Chaplain Carron Caldwell, in their individual and official capacities.

Plaintiff claims that, in 2005, Defendants refused to accommodate his right to practice and worship Wicca[2] under § 2000cc-1 of the Religious Land Use and Institutionalized Persons Act (RLUIPA). The RLUIPA provides, in pertinent part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2).

---

[2] " Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity. Its practices include the use of herbal magic and benign witchcraft." *O'Bryan v. Bureau of Prisons,* 349 F.3d 399, 400 (7th Cir. 2003) (citations omitted).

3

Plaintiff argues that he was wrongfully denied his right to exercise Wicca because: (1) Defendants Caldwell, Mayfield, Lafler, and Caruso refused his request to purchase religious articles[3], including herbs and herbal teas, anointing oils, candles, a scrying bowl and/or crystal ball, altar, altar cloth, chalice, athame and/or wand, ceremonial cloak/robe, altar mixing/offering bowl, altar pentacle, bell, the Book of Shadows, incense and incense burner, and crystals, under MICH. DEP'T OF CORR., Policy Directive 05.03.150, ¶ KK (effective 5/24/04)[4]; (2) Defendants Caldwell, Mayfield, Lafler, and Caruso refused to approve the mail-order vendor, "Azure Green," which sells the above Wiccan religious articles, under Policy Directive 05.03.150, ¶ NN; (3) Defendants Caldwell, Mayfield, Lafler and Caruso refused to allow Wiccan clergy to worship with Plaintiff in violation of Policy Directive 05.03.150, ¶ AAA; (4) Defendant Caruso unlawfully restricted Plaintiff from exercising Wicca in group meetings, ceremonies, and rituals in Policy Directive 05.03.150, ¶ QQ(2); and (5) Defendants Abrams, Lafler, Armstrong, and Caruso wrongfully denied his request for a book titled "Buckland's Complete Book of Witchcraft" because it had been placed on the MDOC restricted book list. Plaintiff alleges that Caldwell failed to grant exceptions to the policy to permit Plaintiff to practice his religion and that Mayfield and Lafler approved Caldwell's actions by denying Plaintiff's grievances. He also alleges that Defendant Caruso has adopted and maintained a policy that discriminates against the practice of Wicca and that fails to comply with RLUIPA.

For relief, Plaintiff requests declaratory and injunctive relief, and monetary damages.

---

[3] Under MICH. DEP'T OF CORR., Policy Directive 05.03.150, ¶ QQQ(2) & Attach. B (effective 05/24/04), prisoners belonging to the religious group of Wicca may possess one deck of tarot cards and one Celtic cross or pentagram.

[4] Policy Directive 05.03.150, ¶ KK states that prisoners may possess religious property that has not already been authorized only upon written request to the Warden, Technical Rule Violation Director or designee. Plaintiff submitted such a request to Defendant Caldwell, a chaplain. *See* Attach. A to P's Compl.

4

**Discussion**

I.  Statutory Exhaustion Requirements

Defendants Mayfield, Lafler and Caruso claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

II.  MDOC Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[5], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance

---

[5] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶S.  In such

6

instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

### III. Grievances

Plaintiff filed two grievances concerning the claims asserted in his complaint. First, on July 4, 2005, in Grievance No. SLF-05-07-1456-20a, Plaintiff asserted that Defendant Caldwell refused his requests for various items and services necessary to the practice of his religion of Wicca. Second, Plaintiff filed Grievance No. SLF-05-08-1802-28g on August 11, 2005, alleging that Assistant Librarian (Unknown) Hollenbeck[6] denied Plaintiff's request for "Buckland's Complete Book of Witchcraft."[7]

#### A. Grievance No. SLF-05-07-1456-20a

Plaintiff's grievance, No. SLF-0507-1456-20a, against Defendant Caldwell, complained that Caldwell failed to respond to his various requests: (1) for authorization of items beyond the items approved in the policy, as permitted by PD 05.03.150, ¶ KK; (2) for the addition of a vendor who could supply the additional items requested; (3) for access to a Wiccan clergyperson; and (4) for a meeting with the chaplain. Plaintiff declared in his grievance that Caldwell's inaction violated Plaintiff's rights under the RLUIPA.

After an interview with Plaintiff, Defendant Mayfield denied the grievance at Step I. In his response, Mayfield stated that MDOC policy restricted the religious items to Tarot cards and a Celtic cross or pentagram. Second, Mayfield rejected the request for an additional vendor

---

[6]Assistant Librarian Hollenbeck is not listed as a Defendant in this action.

[7]Defendants attach to their motion yet another grievance, No. MCF 06-11-0822-07a, which contains allegations about an unrelated mail rejection in October 2006. Plaintiff does not rely on the grievance and makes no allegations related to the grievance in his complaint. Grievance No. MCF-06-11-0822-07a therefore is entirely irrelevant to Plaintiff's exhaustion of the complaint before the Court.

because the two approved items were available from two approved sources. Third, Mayfield found that Caldwell had been seeking clergy from the Wiccan faith to visit Plaintiff. Fourth, Mayfield found that Chaplain Caldwell had responded by sending the list of vendors and approved property.

Plaintiff appealed his grievance to Step II. Defendant Lafler denied the grievance and affirmed the Step I decision, stating that Plaintiff's requests exceeded the limitations set forth in PD 05.03.150, Attachment B. Plaintiff appealed the grievance to Step III. Prior to filing his original complaint, Plaintiff had not received a response. The Step III response eventually was issued on March 7, 2006. Pursuant to Policy Directive 03.02.130, ¶ U, Plaintiff exhausted this claim on November 9, 2005, because the 90-day period for completing the entire grievance process had expired.

Defendants do not dispute that Grievance No. SLF-05-07-1456-20a fully exhausted Plaintiff's claims against Defendant Caldwell. They contend, however, that the grievance did not name Defendants Mayfield, Lafler or Caruso. As a consequence, they assert that the grievance did not exhaust Plaintiff's claims against them. The grievance policy expressly permits prisoners to file grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E. At no stage of the grievance process did Plaintiff name Mayfield, Lafler or Caruso, as required under PD 03.02.130, ¶ T. He therefore has failed to properly exhaust his administrative remedies against these Defendants with respect to any claim based on the misapplication of the religious practices policy, PD 05.03.150.

        **B.**      **Grievance No. SLF-05-08-1802-28g**

On July 24, 2005, Plaintiff submitted to Assistant Librarian (Unknown) Hollenbeck a book request for "Buckland's Complete Book of Witchcraft." Hollenbeck denied the book request

8

on August 9, 2005, because the book had been placed on the MDOC Restricted Publications List. Plaintiff filed Grievance No. SLF-05-08-1802-28g on August 11, 2005, naming Hollenbeck and complaining about the denial of the book request. Plaintiff appealed the grievance through all three steps, but he did not receive a response from Step III before he filed his original complaint. Pursuant to Policy Directive 03.02.130, ¶ U, Plaintiff exhausted this claim on November 9, 2005, at the expiration of the 90-day time limit for completion of the grievance process.

As with Plaintiff's other grievance, Grievance No. SLF-05-08-1802-28g is exhausted as to the persons named in that grievance, in this case, Assistant Librarian Hollenbeck.[8] It is not, however, exhausted with respect to Defendants Mayfield, Lafler and Caruso, who were not named as required under PD 03.02.130, ¶ E. Accordingly, to the extent Plaintiff claims that these Defendants violated MDOC policy by rejecting the book, his claim must be rejected as unexhausted.

### C. Challenge to Content of PD 05.03.150

Plaintiff, however, directly challenges the content of PD 05.03.130 and Attachment B with respect to their limitations on religious items available to Plaintiff and with respect to the preclusion of group services for followers of the Wicca religion. He also challenges the MDOC policy decision to include "Buckland's Complete Book of Witchcraft" on the MDOC Restricted Publications List under PD 05.03.118, ¶ RR (prohibiting prisoners from receiving a hearing on items rejected because they have been placed on the MDOC Restricted Publications List).

The grievance policy expressly prohibits prisoners from filing grievances challenging the content of a policy. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E ("A grievant may not grieve the <u>content</u> of policy or procedure; such grievances shall be rejected by the grievance

---

[8] Assistant Librarian Hollenbeck is not listed as a Defendant in this action.

coordinator."). *See also Harbin-Bey v. Rutter*, 420 F.3d 571, 581 (6th Cir. 2005). Michigan prisoners cannot grieve the content of a policy. As a consequence, the grievance policy was not an available remedy to Plaintiff to resolve his claims against Defendants concerning the content of the policy. *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of "available" remedies); *Woodford*, 126 S. Ct. at 2386; *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (prisoner may not be required to exhaust administrative remedies regarding non-grievable issues). Defendants' motion for summary judgment therefore should be denied with respect to Plaintiff's challenges to the content of the prison policies.

### Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket # 25) based on Plaintiff's failure to exhaust his available administrative remedies be granted in part and denied in part. Defendants' motion should be granted with respect to any claims by Plaintiff that he was denied religious items, group worship or religious books in violation of MDOC policy, except as to the claims against Defendant Caldwell. I recommend that the motion be denied in all other respects.

Dated: February 26, 2008          /s/ Joseph G. Scoville
                                  United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).