UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| MITCHELL D. PUGH, # 196686, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-138 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| PATRICIA CARUSO, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983

and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a),

for alleged violations of plaintiff's right to practice Wicca.   The events giving rise to this lawsuit

allegedly occurred while plaintiff was an inmate at the St. Louis Correctional Facility (SLF), located

in St. Louis, Michigan.   Plaintiff is currently an inmate at the Muskegon Correctional Facility (MCF)

located in Muskegon Heights, Michigan.   Plaintiff's complaint lists six defendants:

(1)     Director of the Michigan Department of Corrections (MDOC) Patricia Caruso;
(2)     MDOC Prison Affairs Manager James Armstrong;
(3)     SLF's Warden Blaine Lafler;
(4)     SLF's Classification Director Julius Mayfield;[1]
(5)     SLF's Grievance Coordinator Daniel Abrams; and
(6)     SLF's Chaplain Carron Caldwell.

The matter is now before me on defendant Caldwell's motion for summary judgment.

(docket # 47).   Plaintiff filed his brief in opposition to defendant's motion on November 19, 2007

---

[1] On April 24, 2004, the court granted in part and denied in part a motion for summary judgment by defendants Caruso, Lafler, and Mayfield.  (4/24/08 Order, docket # 62).

(docket # 54), and the motion has long been ready for decision.  For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted.

### Plaintiff's Claims Against Defendant Caldwell

Plaintiff alleges that defendant Caldwell violated his  rights under RLUIPA and the First Amendment when Caldwell failed to respond a June 17, 2005 letter in which plaintiff made the following demands:

(1)     that Caldwell authorize plaintiff to purchase and use sixteen items of personal property that plaintiff was not permitted to possess under MDOC Policy Directive 05.03.150;

(2)     that Caldwell allow plaintiff to purchase the prohibited items from a non-authorized vendor, Azure Green, in violation of Policy Directive 05.03.150; and

(3)     that Caldwell violate Policy Directive 05.03.150 by making arrangements for Wiccan group services at SLF at a time when Wiccans had not obtained MDOC authorization for group services.

(docket # 1, ¶¶ 54, 80, 82, 84, and attachment to Exhibit A).  Plaintiff sued defendant Caldwell in her individual and official capacities.  (docket # 1, ¶¶ IV(C), 9, 10).  Plaintiff seeks monetary damages and declaratory and injunctive relief.  (*Id.* at 22-23, ¶¶ A-G).

### Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).   The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006); *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  "A nonmoving party may not avoid a properly supported motion for summary judgment

by simply arguing that it relies solely or in part on credibility considerations.  Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment.  The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005).

## Facts

The following facts are beyond genuine issue. The MDOC "recognizes religious groups for the purpose of identifying those groups authorized to conduct religious group services and activities and/or identifying authorized personal religious property prisoners belonging to the religious group may possess . . . ."  (Policy Directive 05.03.150, ¶ K (effective 5/24/04), docket # 48, Ex. C)).  The deputy director of the MDOC's Corrections Facilities Administration (CFA) makes the final determination whether a group will be granted official MDOC recognition, and if so, "whether group religious services and activities and personal religious property will be allowed."  (*Id.*, ¶ N).

Plaintiff is serving sentence of life imprisonment on his second-degree murder conviction.  Plaintiff is a practitioner of Wicca, and has signed a declaration advising the MDOC of his faith preference.  (docket # 1, ¶¶ 33-36, docket # 48, Ex. C, Policy Directive 05.03.150, ¶ T; Plf. Aff. ¶ 4, docket # 54, Ex. F).  The MDOC allows Wiccan prisoners to possess the following religious personal property items:  one pack of  Tarot cards made from card stock, no longer than

three and one-half inches by four and one-quarter inches; and one Celtic cross or pentagram, no larger one and one-half inches by two inches, with a chain or string no longer than twenty-four inches.  (Policy Directive 05.03.150, Attachment B).   "Wicca" is not a religious group that the MDOC has authorized to conduct group religious services.  (*Id.*).  Institutional chaplains cannot schedule group services and activities unless permitted under MDOC policy.  Chaplains do not have authority to allow prisoners to purchase or posses religious personal property items beyond the property permitted by the MDOC's policy.  (*Id.*, ¶¶ JJ, KK).

On June 17, 2005, plaintiff drafted a letter addressed to Chaplain Caldwell requesting the "right to purchase and use" sixteen items of personal religious property that plaintiff was not permitted to purchase or possess under Policy Directive 05.03.150:

1.  various herbs and herbal teas;
2.  various anointing oils;
3.  various candles;
4.  a scrying bowl and/or crystal ball;
5.  an altar;
6.  an altar cloth;
7.  a chalice;
8.  an athame;
9.  a ceremonial cloak/robe;
10. an altar mixing/offering bowl;
11. an altar pentacle;
12. a bell;
13. the Book of Shadows;
14. an incense burner (censer);
15. various crystals; and
16. various types of incense.

(docket # 1, Ex. A).  Plaintiff's letter concluded with the list of additional demands set forth verbatim below:

In addition to those items above, I will also need a vendor from which to purchase said items. It is my understanding that currently there are available vendors Wildflowers, and

-5-

Llewellyns.  However, these vendors are inadequate for my religious needs and do not carry the items as depicted above, which are necessary for my meaningful religious practice.  As a suggestion, the vendor Azure Green[2] is currently available and has all of the above religious paraphernalia available also.

Also I am requesting that a day, place and time be made available, at least once a week, for the arrangement of worship with other practicing Wiccans at SLF, as is presently offered to various other religious prisoners at this facility.  For said worship, an Altar, Altar Cloth, Candles, Incense, Incense Burner (Censer), Chalice, Athame, an Altar Pentacle, Book of Shadows and Altar mixing/offering bowl will have to be made available, or allowed to be brought to the place of worship by the attendees.

Additionally, there are eight major Holy Days in Wicca, on those days of celebration/worship a qualified Wiccan Priestess or Priest should be arranged to come to SLF as a volunteer if one is not currently available at SLF.

(*Id.*).  Defendant Caldwell did not respond to plaintiff's letter.  (docket # 1, ¶ 14; Plf. Aff., ¶¶ 12, 13, docket # 54, Ex. F).

It is undisputed that at all times relevant to his complaint, plaintiff has been able to exercise Wicca by "praying and consulting a deck of Tarot cards (divination)."  (Plf. Aff.,  ¶ 6). Plaintiff states that incarceration and the application of Policy Directive 05.03.150 have  burdened the exercise of his religion by depriving him of sixteen personal property items.  The sixteenth item that plaintiff listed in his affidavit is different from the sixteenth item in his letter and complaint. Item number sixteen in plaintiff's June 17, 2005 letter and paragraph 47(p) of his complaint is "various [types of] incense."  Item sixteen in plaintiff's affidavit is the absence of "various living plants and flowers."  (Plf. Aff., ¶ 7).  Plaintiff states that the exercise of his faith has been burdened by the absence of group meetings with other Wiccans and Wiccan clergy.  He also indicates that his religious exercise has been burdened in  prison because he lacks "an outdoor environment in which

---

[2]Azure Green is not an MDOC-authorized vendor.  Azure Green was removed from the MDOC's list of authorized vendors because the company had a history of violating the MDOC's rules prohibiting transfers of funds between prisoners.  (docket # 48, Exhibit A).

to perform Wiccan rituals." (*Id.*, ¶ 7). According to plaintiff, his practice of Wicca has become "hollow and unsatisfying, on a tangible and physical level, in that he has been unable to meaningfully celebrate his connection to Nature and his Deities." (*Id.*, ¶ 9).

<u>**Discussion**</u>

**I.    Mootness**

Plaintiff is and has been an inmate at the Muskegon Correctional Facility (MCF) since at least February 28, 2006. (docket # 1, ¶ II). Plaintiff's claims for declaratory and injunctive relief against defendant Caldwell are moot as a result of plaintiff's transfer to MCF, as Caldwell has no authority at MCF. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003).

**II.    Eleventh Amendment Immunity**

**A.    <u>Constitutional Claims</u>**

Plaintiff's constitutional claims for monetary damages against defendant Caldwell in her official capacity are barred by Eleventh Amendment immunity. Eleventh Amendment immunity is a threshold issue that should be raised and decided by the trial court. *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002). A suit against a state officer in her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't*

-7-

*of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment generally[3] bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006).  The State of Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  Defendant Caldwell is entitled to judgment in her favor as a matter of law on plaintiff's claims for monetary damages against defendant in her official capacity based on alleged violations of plaintiff's First Amendment rights.

        B.      <u>Statutory RLUIPA Claims</u>

        1.      Sovereign Immunity

Defendant Caldwell seeks dismissal of plaintiff's statutory RLUIPA claims for monetary damages against her in her official capacity on Eleventh Amendment immunity grounds. (Def. Brief at 3-4, docket # 48).  Plaintiff argues that Eleventh Amendment immunity does not bar these RLUIPA claims.  (Plf.  Brief at 10-13, docket # 54).  I find that defendant Caldwell is entitled

---

[3] The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional.  *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)(*en banc*).  Plaintiff is seeking prospective injunctive relief against defendant Caldwell in her official capacity.  (Plf. Brief at 13, docket 54)(citing *Ex Parte Young*).  Plaintiff fails to recognize that his claim for such relief against defendant Caldwell is moot.

to Eleventh Amendment immunity on plaintiff's claims for monetary damages against defendant in her official capacity.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although by its terms the Eleventh Amendment applies only to suits against a State by citizens of another State, Supreme Court decisions have long recognized that the Eleventh Amendment applies to suits by citizens against their own States. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 669-70 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

> [F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States. *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 669-670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Seminole Tribe, supra*, at 54, 116 S.Ct. 1114; *see Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

*Kimel v. Florida Bd. of Regents*, 528 U.S. at 73.

RLUIPA represents an exercise of the Spending Power of Congress. States accepting money under such congressional enactments are generally bound by the conditions, or "strings" that Congress attaches. In the context of Eleventh Amendment immunity, the question is whether a state, by accepting such funds, has waived its sovereign immunity from suit by implicitly agreeing to a condition that the state subject itself to suit imposed by Congress. The Supreme Court requires that

any condition leading to such a waiver be expressed in "unmistakably clear language." *Will v. Michigan Dep't of State Police*, 491 U.S. at 65.  "[T]o be bound by 'federally imposed conditions,' recipients of federal fundings must accept them 'voluntarily and knowingly.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2459 (2006).  Currently there is a circuit split on the question whether claims for monetary damages under RLUIPA are barred by the Eleventh Amendment under these principles.  The Fourth Circuit has held that such actions are barred.  *See Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006); *accord Scott v. Beard*, 252 F. App'x 491, 492-93 (3d Cir. 2007)(RLUIPA claim for monetary damages against Secretary Beard in his official capacity was "barred by the Eleventh Amendment."); *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006)(finding that sovereign immunity barred claims for monetary damages under the analogous Religious Freedom Restoration Act (RFRA)).[4]  The Eleventh Circuit is the only circuit that has permitted an official capacity action for monetary damages over an Eleventh Amendment objection.  *See Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007).  The Fourth Circuit's approach in favor of Eleventh Amendment immunity is better reasoned and is far more consistent with recent Supreme Court precedent.

The Fourth Circuit determined that the Eleventh Amendment bars a prisoner's RLUIPA claims for monetary damages against the State.  *See  Madison v. Virginia*, 474 F.3d 118

---

[4]*See also Keen v. Noble*, No. CV F 04-5645, 2007 WL 2789561, at * 8 (E.D. Cal. Sept. 20, 2007)(RFRA did not waive the United States' sovereign immunity from claims for damages because the phrase "appropriate relief" was not sufficient to waive sovereign immunity)(collecting cases); *Bloch v. Thompson*, No. 1:03-cv-1352, 2007 WL 60930, at * 5 (E.D. Tex. Jan. 5, 2007)("RFRA did not waive the government's sovereign immunity with respect to monetary damages."); *Gee v. Kempthorne*, No. CV 03-432-S-LMB, 2007 WL 317051, at * 2 (D. Idaho Jan. 30, 2007).

(4th Cir. 2006).[5]  In *Madison*, the court held that the state's acceptance of RLUIPA funds cannot be deemed consent to be sued for damages.[6]  The acceptance of federal funds with conditions attached "in no way implie[d] that a state has consented to each and every remedy to which it could conceivably be subjected."  474 F.3d at 129.  The Fourth Circuit held that the State had only waived Eleventh Amendment immunity as to claims for equitable forms of relief under RLUIPA:

> We begin with the text of the statute.  *See*, *e.g.*, *Arlington [Cent. Sch. Dist. Bd. of Educ. v. Murphy]*, [548 U.S. 291], 126 S.Ct. [2455,] 2459 [(2006)].  Section 4(a) of RLUIPA provides that any person may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  The statute defines "government" to include states, state agencies, and state departments.  *Id.* § 2000cc-5.  On its face, RLUIPA thus creates a private cause of action against the State, *Madison* [*v. Riter*], 355 F.3d [310,] 314 [(4th Cir. 2003)], and Virginia cannot be heard to claim that it was unaware of this condition.  By voluntarily accepting federal correctional funds, it consented to federal jurisdiction for at least some form of relief. *See Benning* [*v. Georgia*], 391 F.3d [1299,] 1306 [(11th Cir. 2004)] ("[State] was on clear notice that by accepting federal funds for its prisons, [it] waived its immunity from suit under RLUIPA.").  Because "appropriate relief" ordinarily includes injunctive and declaratory relief, *see*, *e.g.*, *Shea v. County of Rockland*, 810 F.2d 27, 29 (2d Cir.1987), Madison's claims for equitable relief are not barred by the Eleventh Amendment.

*Madison v. Virginia*, 474 F.3d at 130-31.  The Court of Appeals observed that the Supreme Court's decisions in *Lane v. Pena*, 518 U.S. 187 (1996), *United States v. Nordic Village, Inc.*, 503 U.S. 30, 39 (1992), *Library of Congress v. Shaw*, 478 U.S. 310 (1986), and *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985), established an analytical framework requiring that the scope of any waiver of sovereign immunity be narrowly construed:

---

[5]The Fourth Circuit found that RLUIPA was a valid exercise of Congress' Spending Clause powers.  474 F.3d at 124-28.

[6]The sole issue before the Fourth Circuit was whether the Eleventh Amendment barred a claim for damages against the defendants in their official capacities.  474 F.3d at 130 n. 3.  The Fourth Circuit had no occasion to address whether the statute permitted claims for damages against defendants in their individual capacities.  *Id.*

In analyzing whether a sovereign has waived its immunity, we strictly construe the scope of any alleged waiver in favor of the sovereign. *Lane*, 518 U.S. at 192, 116 S.Ct. 2092. We may "not enlarge the waiver beyond what the language requires." *Shaw*, 478 U.S. at 318, 106 S.Ct. 2957 (internal citations and quotations omitted). Consent to suit is never implied. *See Atascadero*, 473 U.S. at 247, 105 S.Ct. 3142. And ambiguities are construed in favor of immunity. *Nordic Vill.*, 503 U.S. at 34, 112 S.Ct. 1011. In short, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192, 116 S.Ct. 2092; *see also Nordic Vill.*, 503 U.S. at 34, 112 S.Ct. 1011. It is of no moment that some of the cases in this area involve the question of whether Congress has waived federal sovereign immunity, because "[i]n considering whether the Eleventh Amendment applies ... cases involving the sovereign immunity of the Federal Government ... provide guidance." *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 506, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998).

The Supreme Court's decision in *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), is telling. At the time the case was decided, Section 106(c) of the Bankruptcy Code provided, "[N]otwithstanding any assertion of sovereign immunity ... a determination by the court of an issue arising under [a provision of the Bankruptcy Code that applies to governmental units] binds governmental units." *Id.* at 32, 112 S.Ct. 1011. The Court held that section 106(c) of the Bankruptcy Code did not waive federal sovereign immunity for monetary relief. Id. at 39, 112 S.Ct. 1011. The Court noted that although section 106(c) waived sovereign immunity for some claims and could be interpreted to provide for money damages, it could also be read to preclude them. *Id.* at 34-37, 112 S.Ct. 1011. As a result, section 106(c) did not contain the "unequivocal textual waiver" required to waive sovereign immunity for monetary relief. *Id.* at 39, 112 S.Ct. 1011.

*Madison v. Virginia*,  474 F.3d at 131.

The Fourth Circuit found that "RLUIPA's 'appropriate relief against a government'[7] language fell well short of the unequivocal textual expression necessary to waive State immunity from suits for damages." *Madison*, 474 F.3d at 131. "The statute itself makes no reference to monetary relief -- or even to sovereign immunity generally." *Id.* Like the provision in *Nordic Village*, "appropriate relief" was "susceptible to more than one interpretation" and could be read to

---

[7] "The starting point in every case involving the construction of a statute is the language itself." *Earnst & Earnst v. Hochfelder*, 425 U.S. 185, 197 (1976). "Appropriate relief" against a State is generally limited to declaratory or injunctive relief against a State employee in his or her official capacity. *Ex Parte Young*, 209 U.S. 123, 160-62 (1908).

include damages in some contexts and not in others.  The Fourth Circuit found compelling the logic

of the recent decision in *Webman v. Federal Bureau of Prisons*, 411 F.3d 1022, 1026 (D.C. Cir.

2006), holding that an identical "appropriate relief" provision in the Religious Freedom Restoration

Act (RFRA) was insufficient to waive federal sovereign immunity from damages.  474 F.3d at 132

("[T]he *Webman* court found RFRA's 'appropriate relief against a government' text to be

ambiguous, 'open-ended[,] and equivocal,' it concluded that such language could not effect a waiver

of sovereign immunity.").  If Congress had intended to waive the State's immunity from claims for

monetary damages in exchange for acceptance of federal funds, it had to do more than resort to

RLUIPA's ambiguous phrase, "appropriate relief":

> Had Congress wished to effect a State's waiver of Eleventh Amendment sovereign immunity from suit for damages as a consequence of accepting federal funds, it could easily have expressed that intention.  In the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(2) (2000), for instance, Congress crafted a clear waiver of federal sovereign immunity from monetary relief.[8]  The Act provides for federal jurisdiction and permits a "complaining party [to] recover compensatory ... damages" from, inter alia, government actors. *Id*.
>
> While particular phrasing may not be necessary to waive sovereign immunity for damages, an unequivocal textual waiver of immunity that "extend[s] unambiguously to such monetary claims" is. *See Lane*, 518 U.S. at 192, 116 S.Ct. 2092.  Thus the fact that "appropriate relief" is open-ended forecloses any argument that the statute waives immunity for monetary relief. *Nordic Vill.*, 503 U.S. at 37, 112 S.Ct. 1011; *see also Webman*, 441 F.3d at 1026; *Riley*, 106 F.3d at 566.

*Madison v. Virginia*,  474 F.3d at 132.

In *Smith v. Allen*, the Eleventh Circuit utilized a different analytical approach.  It first

attempted to determine whether the phrase "appropriate  relief" was broad enough to include

monetary damages, then, as a secondary analytical step, attempted to address the question whether

---

[8]*See also United States v. Georgia*, 546 U.S. 151, 154 (2006); *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 833, 726 (2003).

monetary damages were available in the individual capacity or official capacity contexts.  502 F.3d at 1270-76.  The Eleventh Circuit's flawed analytic approach caused it to come to an erroneous conclusion on the question of whether damages can be recovered under RLUIPA against a state official acting in his or her official capacity.  The Eleventh Circuit began its analysis with the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992).  In *Franklin v. Gwinnett*, the Supreme Court observed that its earlier decision in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), had established that "Title IX is enforceable through an implied right of action," but had not decided "what remedies [were] available in a suit brought pursuant to this implied right."  503 U.S. at 65.  The Supreme Court made pellucid in *Franklin v. Gwinnett* that it was not engaged in the normal exercise of interpreting statutory terms, but was instead attempting to elaborate the remedies available in the context of an implied cause of action:

> In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Court held that Title IX is enforceable through an implied right of action.  We have no occasion here to reconsider that decision.  Rather, in this case we must decide what remedies are available in a suit brought pursuant to this implied right.  As we have often stated, the question of what remedies are available under a statute that provides a private right of action is "analytically distinct" from the issue of whether such a right exists in the first place.  *Davis v. Passman*, 442 U.S. 228, 239, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979).  Thus, although we examine the text and history of a statute to determine whether Congress intended to create a right of action, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.  *Davis*,[9] *supra*, 442 U.S., at 246-247, 99 S.Ct., at 2277-2278.

---

[9]*Davis* involved an implied cause of action and the relief available to the plaintiff in the context of an implied cause of action.  442 U.S. at 240-48.

*Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. at 65-66.[10]  The above-quoted "presumption" of "all appropriate remedies" applies to the remedies defined by the Supreme Court for an implied cause of action,[11] and it cannot be properly applied in the statutory construction context where, as here, the defendants have a claim of entitlement to sovereign immunity.  A review of the Supreme Court's post-*Franklin v. Gwinnett* decisions reveals that the Supreme Court has very carefully restricted any "presumption" with regard to remedies to implied causes of action and defendants lacking a claim of entitlement to sovereign immunity.  *See e.g.*, *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002)("appropriate relief" in an implied cause of action under Title IX does not include a claim for punitive damages); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 639-40 (1999)(implied cause of action under Title IX); *Gebser* 524 U.S. at 284-86; *Lane v. Pena*, 518 U.S.

---

[10]The school district defendant in *Gwinnett* had no possible claim to Eleventh Amendment immunity.

[11]  The Supreme Court's decision in *Gebser v. Largo Vista Independent School Dist.*, 524 U.S. 274 (1998), clarified that when the Court is engaged in the speculative task of attempting to define the remedies available under an implied cause of action, the Court is not attempting to determine what Congress meant by the terms it used in a statute.  *Id.* at 285.  "Because the private cause of action under Title IX is judicially implied, we have a measure of latitude to shape a sensible remedial scheme that best comports with the statute.  That endeavor inherently entails a degree of speculation, since it addresses an issue on which Congress has not specifically spoken."  *Id.* at 284 (internal citations omitted).  "Because Congress did not expressly create a private cause of action under Title IX, the statutory text does not shed light on Congress' intent with respect to the scope of available remedies.  *Franklin*, 503 U.S., at 71, 112 S. Ct., at 1035-1036; *id.* at 76, 112 S. Ct. at 1038 (SCALIA, J. concurring in judgment).  Instead, 'we attempt to infer how the [1972] Congress would have addressed the issue had the . . . action been included as an express provision of the' statute."  *Gebser*, 524 U.S. at 285 (quoting *Central Bank of Denver v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 178 (1994)).  In this unusual context, the Supreme Court only looks to the statute as a generalized guide in an effort to make sure that the Court's newly-fashioned remedy is not "at odds" with the statutory structure and purpose: "To guide the analysis, we generally examine the relevant statute to ensure that we do not fashion the scope of an implied right in a manner at odds with the statutory structure and purpose."  524 U.S. at 284.

-15-

at 196-97 ("Government's sovereign immunity prohibits wholesale application of *Franklin* to actions against the Government to enforce § 504(a)" of the Rehabilitation Act because where a cause of action is authorized against the federal government, the available remedies are not those that are "appropriate" but only those for which sovereign immunity has been *expressly* waived."); *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 291 (1993)("The private right of action under Rule 10b-5 was implied by the judiciary" and "[t]hus it would be futile to ask whether the 1934 Congress [] displayed a clear intent to create a contribution right collateral to the remedy.").

The Eleventh Circuit began its analysis of RLUIPA "on the wrong foot" when it found that monetary damages are available under RLUIPA by applying the implied cause of action remedy "presumption" out of context:

> In light of *Franklin* and its progeny, we agree that the use of the phrase "appropriate relief" in section 3 of RLUIPA, 42 U.S.C. § 2000cc(a), is broad enough to encompass the right to monetary damages in the event a plaintiff establishes a violation of the statute. Congress expressed no intent to the contrary within RLUIPA, even though it could have, by, for example, explicitly limiting the remedies set forth in § 2000cc(a) to injunctive relief only. Instead, Congress used broad, general language in crafting the remedies section of RLUIPA, stating that a prevailing party could obtain "appropriate relief." 42 U.S.C. § 2000cc(a). We assume that, when Congress acted, it was aware of *Franklin's* presumption in favor of making all appropriate remedies available to the prevailing party. *See Franklin*, 503 U.S. at 73, 112 S.Ct. at 1036. In light of that presumption, we conclude that, absent an intent to the contrary, the phrase "appropriate relief" in RLUIPA encompasses monetary as well as injunctive relief.

*Smith v. Allen*, 502 F.3d 1255, 1270 -1271 (11th Cir. 2007). The only "progeny" of *Franklin v. Gwinnett* cited by the Eleventh Circuit consisted of a 1992 First Circuit decision: *Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d at 1187, 1191 (1st Cir. 1994). *Reich* involved a defendant with no possible Eleventh Amendment immunity, and there is no evidence suggesting that Congress was aware of the First Circuit's decision, much less that it drafted RLUIPA with that case in mind.

-16-

By contrast, when Congress enacted RLUIPA, it was certainly aware of a series of then-recent Supreme Court's decisions: (1) *Lane v. Pena*'s holding that *Franklin* cannot be applied wholesale against the government because the only "appropriate" remedies are those for which sovereign immunity has been *expressly* waived, that ambiguities are resolved in favor of immunity, and that "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend *unambiguously* to such monetary damages," 518 U.S. at 192; (2) *Alden v. Maine*, 527 U.S. 706, 712-13 (1999), emphasizing that reference to the States' immunity from suit as Eleventh Amendment immunity is somewhat of a misnomer, and that the phrase is "convenient shorthand" for "the sovereign immunity of the States [that] neither derives from, nor is limited by, the terms of the Eleventh Amendment" but is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the convention or certain constitutional Amendments;" and (3) *College Savings Bank v. Florida Prepaid Postsecondary Expense Bd.*, 527 U.S. 666, 682 (1999), holding that the "settled proposition" that "the United States' waiver of sovereign immunity cannot be implied  but must be unequivocally expressed" and that the Supreme Court found "no reason why the rule should be different with respect to state sovereign immunity." A Congress familiar with these three Supreme Court decisions could not have reasonably understood a prisoner's cause of action for "appropriate relief" under 42 U.S.C. §2000cc-2(a) to include a claim for monetary damages against a State or its officials.  Appropriate relief against a government is the type of equitable relief permitted under *Ex Parte Young* -- injunctive relief against a State official in his or her official capacity.  RLUIPA does not contain an unambiguous waiver of the State's sovereign immunity for monetary damages.  An "assumption" that Congress was aware of an

inapplicable "presumption" does not and cannot establish an adequate foundation for finding that "appropriate relief" includes a right to recover monetary damages.

In summary, following numerous other courts, including this court's recent decision in *Cardinal v. Metrish*, No. 2:06-cv-232, 2008 WL 696479, at * 3-4 (W.D. Mich. Mar. 13, 2008)(Quist J.), I find the Fourth Circuit's reasoning is compelling. *See Sharp v. Johnson*, No. 00-2156, 2008 WL 941686, at * 19 (W.D. Pa. Apr. 7, 2008); *Gibb v. Crain*, No. 6:04cv81, 2008 WL 744249, at * 3 (E.D. Tex. Mar. 19, 2008); *Bock v. Gold*, No. 1:05-cv-151, 2008 WL 345890, at * 6 (D. Vt. Feb. 7, 2008)("RLUIPA does not create a cause of action for monetary damages against defendants in their official capacities."); *Toler v. Leopold*, No. 2:05cv82, 2007 WL 2907889, at * 1-2 (E.D. Mo. Oct. 1, 2007); *Dean v. Blum*, No. 406cv3016, 2007 WL 2264615, at * 7 (D. Neb. Aug. 6, 2007); *Nelson v. Miller*, No. 03-254-CJP, 2007 WL 294276, at * 9 (S.D. Ill. Jan. 30, 2007); *Limbaugh v. Thompson*, Nos. 2:93cv1404-WHA, 2:96cv554-WHA, 2006 WL 2642388, at * 6 (M.D. Ala. Sept. 14, 2006); *Boles v. Neet*, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005)("appropriate relief" under RLUIPA is limited to injunctive and/or declaratory relief against a state governmental entity or official sued in official capacity); *Agrawal v. Briley*, No. 02 C 6807, 2006 WL 3523750, at * 9 (N.D. Ill. Dec. 6, 2006). I find that plaintiff's RLUIPA claims for damages against defendant Caldwell in her official capacity are barred by sovereign immunity.

The determination that official capacity claims for damages are barred by sovereign immunity is unaltered when RLUIPA is viewed as an exercise of Congress' Commerce Clause powers. When it enacted RLUIPA, Congress invoked federal authority "under the Spending and Commerce Clauses." *See Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). Federal courts have generally examined RLUIPA as an exercise of congressional power under the Spending Clause rather

than addressing its RLUIPA's "'purport[ed]' . . . Commerce Clause underpinning." *Smith v. Allen*,
502 F.3d at 1274 (citing 42 U.S.C. § 2000cc-1(b)); *see Cutter v. Wilkinson*, 423 F.3d 579, 590 (6th
Cir. 2005)("Because we uphold RLUIPA's validity under the Spending Clause, we have no need to
consider whether the statute is also sustainable under the Commerce Clause."); *see also Madison v.
Virginia*, 474 F.3d at 127 ("Because we hold that the Spending Clause is a valid and sufficient
source of congressional power . . . we need not decide whether RLUIPA exceeds Congress'
Commerce Clause power.").

In *Seminole Tribe v. Florida*, the Supreme Court held that Congress lacks the power
under the Commerce Clause, or any other provision of Article I, to abrogate the State's sovereign
immunity.[12]  517 U.S. at 72-73; *see Garrett*, 531 U.S. at 364 ("Congress may not, of course, base its
abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article
I."); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 672
(1999)("[T]he power 'to regulate Commerce' conferred by Article I of the Constitution gives
Congress no authority to abrogate state sovereign immunity."). "'Even when the Constitution vests
in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents
congressional authorization of suits by private parties against unconsenting States." *Kimel v. Florida*

---

[12] Congress may directly abrogate Eleventh Amendment immunity only when it acts pursuant
to section 5 of the Fourteenth Amendment.  *See Tennessee v. Lane*, 541 U.S. 509, 517-22 (2004).
"[T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, are
necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick
v. Bitzer*, 427 U.S. 445, 456 (1976).  "Congress may subject nonconsenting States to suit in federal
court when it does so pursuant to a valid exercise of its § 5 power." *Garrett*, 531 U.S. at 364.  In
*City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997), the Supreme Court held that RLUIPA's
predecessor, the Religious Freedom Restoration Act (RFRA) was invalid as applied to the States and
their subdivisions because the Act exceeded Congress' remedial powers under the Fourteenth
Amendment.  For the same reasons, RLUIPA cannot be considered a valid exercise of Congress'
power under section 5 of the Fourteenth Amendment.  *See Cutter v. Wilkinson*, 544 U.S. at 715.

*Bd. of Regents*, 528 U.S. at 78 (quoting *Seminole Tribe*, 517 U.S. at 72).  RLUIPA, when viewed as an exercise of Commerce Clause power, cannot overcome the State of Michigan's sovereign immunity under these authorities.

In summary, I find that plaintiff's RLUIPA claims against defendant in her official capacity for monetary damages are barred by sovereign immunity.

## III.    RLUIPA claims for Monetary Damages against Defendant in Her Individual Capacity

Plaintiff has sued defendant in her individual capacity for damages under RLUIPA. RLUIPA's section 3 provides that "[a] person may assert a violation of this chapter as a claim . . . in a judicial proceeding and obtain appropriate relief against a government."[13] 42 U.S.C. § 2000cc-2(a).  The question squarely presented is whether  "appropriate relief" includes an action against defendant her individual capacity for monetary damages.  I find that RLUIPA, as an exercise of Congress' power under the Spending Clause, does not provide a cause of action for damages against defendant Caldwell in her individual capacity.

The Sixth Circuit, in response to a "facial challenge" to section 3 of RLUIPA, has upheld the statute as a valid exercise of Congress' power under the Spending Clause, Article I, section 8, clause 1 of the Constitution "to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States."  *Cutter v. Wilkinson*, 423 F.3d 579, 590 (6th Cir. 2005).  A finding that a statute is facially valid is an extremely narrow judicial determination.  *See, e.g., Cutter v. Wilkinson*, 544 U.S. 709, 726 (2005).

---

[13]The term "government" is defined in RLUIPA as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) a branch, department, agency, instrumentality, or official of an entity listed in clause; and (iii) any other person acting under color of State law."  42 U.S.C. § 2000cc-5.

Although the Sixth Circuit's holding that section 3 of RLUIPA as a facially valid exercise of Congress' Spending Clause power is narrow in its scope, the holding has critical consequences for the remedies available to an incarcerated plaintiff asserting a claim under the statute.

An exercise of Congress' spending power is in the nature of a contract:

> Turning to Congress' power to legislate pursuant to the spending power, our cases have long recognized that Congress may fix the terms on which it shall disburse federal money to the States. Unlike legislation enacted under § 5, however, legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.  Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)(internal citations omitted). RLUIPA's "contractual nature" has critical consequences for scope of remedies available under the statute.  *See Gebser*, 524 U.S. at 287.  When Congress attaches conditions to the award of federal funds under its spending power (as it has in Title IX and Title VI), the Supreme Court "examine[s] closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition. Our central concern in that regard is with ensuring that the receiving entity of federal funds [has] notice that it will be liable for a monetary award." *Gebser*, 524 U.S. at 287 (internal citations and quotation marks omitted).

Defendant Caldwell is not a "recipient" of federal funds.  Caldwell cannot properly be held liable for monetary damages under Congress' Spending Clause powers:

> The Government's enforcement power may only be exercised against the funding recipient, see § 1682, and we have not extended damages liability under Title IX to parties outside the scope of this power.  *See National Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 467, n.

5, 119 S.Ct. 924, 929, n. 5, 142 L.Ed.2d 929 (1999) (rejecting suggestion "that the private right of action available under ... § 1681(a) is potentially broader than the Government's enforcement authority").

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999); *see National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999); *see also Smith*, 502 F.3d at 1274.[14]  In light of the Supreme Court and other authorities, it is probable that the Sixth Circuit will find that there is no statutory claim for monetary damages against an individual defendant for monetary damages under RLUIPA.  I recommend that all plaintiff's claims for damages against defendant Caldwell in her individual capacity for monetary damages be dismissed.  Alternatively, for the reasons set forth in the following section, I find that defendant Caldwell is entitled to qualified immunity on all plaintiff's RLUIPA claims for damages against her in her individual capacity.

---

[14]     [T]he courts have consistently recognized the limited reach of Congress' Spending Power legislation, concluding that statutes passed under the Spending Clause may, as a condition of funding, subject the grant recipient to liability in a private cause of action, but that the Spending Power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action. *See, e.g., id.*; *Hartley*, 193 F.3d 1263, 1270 (same); *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 654 (5th Cir.1997) (stating that "Title IX does not instruct courts to impose liability based on anything other than the acts of the recipients of federal funds" and finding that "[w]hen the school board accepted federal funds, it agreed not to discriminate on the basis of sex," but that it is "unlikely that it further agreed to suffer liability whenever its employees discriminate on the basis of sex"); *see also Jennings v. Univ. of N.C. at Chapel Hill*, 444 F.3d 255, 268 n. 9 (4th Cir.2006), *rev'd on other grounds*, 482 F.3d 686 (2007) (*en banc*), *pet. for cert. filed*, (U.S. July 9, 2007) (No. 07-43) ("Title IX was enacted pursuant to Congress' spending power and prohibits discriminatory acts by funding recipients.  Because school officials are not funding recipients under Title IX, school officials may not be sued in their individual capacities under Title IX.").  Put simply, the federal circuits are in agreement that Title IX, because of its nature as Spending Power legislation, does not authorize suits against public officials in their individual capacities.

*Smith v. Allen*, 502 F.3d at 1274.

## IV.    Qualified Immunity

Plaintiff's complaint seeks an award of damages against defendant Caldwell in her individual capacity under RLUIPA and section 1983.  Caldwell seeks summary judgment on these claims on the basis of qualified immunity.  (Def. Brief at 4-5).  "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability."  *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006); *see Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003).  When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity.  *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744  (6th Cir. 2007).  The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court.  *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence.  The initial

inquiry must be whether the plaintiff has alleged and supported with evidence[15] facts showing that

the defendant's conduct violated a constitutional or statutory right.  *Saucier*, 533 U.S. at 201; *see*

*Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir.

2007); *Silberstein v. City of Dayton*, 440 F.3d at 311; *see also Armstrong v. City of Melvindale*, 432

F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if

the officers' conduct violated no constitutionally protected right, there is no need for further

analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 908 n.5 (6th Cir. 2005) ("[D]istrict courts . . .

may not assume a constitutional violation or skip to qualified immunity, even when qualified

immunity analysis seems conclusive.").

A.    First Amendment Claims

The First Amendment states, "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.  The

Supreme Court has held that by incorporation through the Fourteenth Amendment, the Free Exercise

Clause applies to the States.  *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  A prisoner

retains only those First Amendment freedoms which are "'not inconsistent with his status as a

prisoner or with legitimate penological objectives of the corrections system.'"  *Smith v. Campbell*,

---

[15]A qualified immunity defense can be asserted at various stages of the litigation, including
the summary judgment stage.  *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The
qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6)
stage in that generalized notice pleading no longer suffices, and the broader summary judgment
record provides the framework within which the actions of each individual defendant must be
evaluated.  *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004).  At the summary
judgment stage, a plaintiff may not rely on his pleadings.  Rather, the issue is whether "the plaintiff
has offered sufficient evidence to indicate that what the official did was objectively unreasonable in
light of the clearly established constitutional rights."  *Champion v. Outlook Nashville, Inc.*, 380 F.3d
893, 905 (6th Cir. 2004).

250 F.3d 1032, 1036 (6th Cir. 2001)(quoting *Pell v. Procunier*, 417 U.S. 817,  822 (1974)); *see*

*Turner v. Safley*, 482 U.S. 78 (1987).  Lawful incarceration legitimately requires the retraction or

withdrawal of many rights and privileges as a necessary consequence of society's need to deter and

punish crime.[16]  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "The limitations on the

exercise of constitutional rights arise both from the fact of incarceration and from valid penological

objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security."

*Pell v. Procunier*, 417 U.S. at 822-23.  "The Supreme Court has held that in most circumstances,

prison officials 'should be accorded wide-ranging deference in the adoption and execution of policies

and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting

*Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Plaintiff's claims against defendant Caldwell are rooted in Caldwell's failure to

respond to plaintiff's June 17, 2005 letter.  Plaintiff did not have a constitutionally protected right

to a response to his correspondence.  *See Harris v. Westchester County Dep't of Corrections*, No.

---

[16]Initial issues presented in addressing a Free Exercise Clause claim are whether the plaintiff's beliefs are religious in nature and whether those religious beliefs are sincerely held. *United States v. Seeger*, 380 U.S. 163, 183-84 (1965).  Only beliefs that are religious in nature are protected by the Free Exercise Clause.  *See Thomas v. Review Bd. of the Indian Employment Sec. Div.*, 450 U.S. 707, 713-14 (1981); *Sherbert v. Verner*, 347 U.S. 398 (1963); *see also DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)("The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections . . . only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection.").  Without doubt, prison officials are entitled to assure themselves of a prisoner's sincerity of religious belief as a prerequisite to their considering a request for an accommodation.  *See Africa v. Pennsylvania*, 662 F.2d 1025, 103 (3d Cir. 1981).  In the absence of such an inquiry, prisoners would be free to assert false religious claims that are actually attempts to gain special privileges or disrupt prison life.  *See Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996).  Defendant has not sought summary judgment on the grounds that plaintiff's beliefs are not religious in nature or that they are not sincerely held.

06-Civ.-2011(RJS), 2008 WL 953616, at * 9 (S.D.N.Y. Apr. 3, 2008); *Hodge v. United States*, No. 03-cv-1622, 2007 WL 2571938, at * 13 (M.D. Pa. Aug. 31, 2007); *Castillo v. Blanco*, No. 07-215, 2007 WL 2264285, at * 6 (E.D. La. Aug. 1, 2007); *Manning v. Wells*, No. 6:06-cv-911-GRA-WMC, 2007 WL 1140422, at * 5 (D. S.C. Apr. 17, 2007); *Fogle v. Pierson*, No. 05-cv-01-211-PSF-CBS, 2007 WL 274558, at * 9 (D. Colo. Jan. 29, 2007); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that the allegations that an official ignored a prisoner's letter are insufficient to establish liability.")(collecting cases).  Furthermore, Chaplain Caldwell had no authority to allow plaintiff to possess personal property other than that authorized by the MDOC's policy directive.  She could not authorize plaintiff to purchase personal property items through a non-approved vendor, nor could she schedule group Wiccan services when the MDOC had not authorized such services.

Plaintiff argues that defendant Caldwell violated Policy Directive 05.03.150, ¶ KK when she failed to submit plaintiff's letter "to appropriate supervisors" as directed in [the] MDOC['s] policy directive."  (Plf. Brief at vii, and 1, 3, docket # 54).  Elsewhere he argues that defendant's inaction violated paragraphs M-N and NN of the same policy directive.  (Plf. Brief at 3).  Assuming that a violation of the policy directive occurred,[17] it fails to establish any claim of

---

[17]Policy Directive 05.03.150, ¶ KK required that prisoner's request for non-authorized personal religious property include a description of each item and provide "an explanation of its significance in the prisoner's designated religion."  (docket # 48, Ex. C).  Plaintiff's June 17, 2005 letter was just over a page in length, and it did not include an explanation regarding any of the sixteen personal property items.  Plaintiff's statement that the items were required for "meaningful worship and practice" was a conclusion, not an explanation.  Paragraphs M and N of the policy directive did not specify how a request for group services by a member of a religion that is recognized by the MDOC but that is not authorized for group services is to be processed.  (*Id.*, ¶¶ M, N).  Paragraph NN states that wardens and the CFA's deputy director can authorize vendors from which prisoners may purchase approved religious personal property.  (*Id.*, ¶ NN).  It is devoid of directions regarding what a chaplain must do when confronted with a prisoner's request for

constitutional dimension.  *See Barber v. Salem*, 953 F.3d 232, 240 (6th Cir. 1992)("Failure to comply with a state regulation is not itself a constitutional violation."); *see also Moore v. Michigan*, No. 1:07-cv-561, 2008 WL 724151, at * 1 (W.D. Mich. Mar. 17, 2008); *accord Wilson v. Hoffbauer*, 113 F. App'x 651, 653 (6th Cir. 2004); *Green v. Monroe*, 43 F. App'x 880 (6th Cir. 2002).  Plaintiff has not raised a genuine issue of fact for trial and defendant Caldwell is entitled to judgment in her favor as a matter of law on plaintiff's First Amendment claims.

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement under *Saucier*, plaintiff would nonetheless fall short of showing that the rights he claims defendant Caldwell violated were "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right.  533 U.S. at 201.  The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d at 316.  "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'"  *Lyons v. City of Xenia*, 417 F.3d 565, 572

---

unauthorized religious personal property items from a non-authorized vendor.

(6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'").  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001).  "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002).  Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[18] in light of preexisting law, the unlawfulness must be apparent.  *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569.  "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005).  The court must focus on whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit.  *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).  "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Thus,

---

[18]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key*, 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427.

Plaintiff has not addressed, much less carried his burden of demonstrating that the First Amendment rights that he claims defendant Caldwell violated were clearly established on June 17, 2005. Defendant's actions did not violate any clearly established First Amendment rights. *See, e.g.*, *Watson v. McGinnis*, 964 F. Supp. at 130 ("The law is clear that the allegations that an official ignored a prisoner's letter are insufficient to establish liability.")(collecting cases). Accordingly, I find that defendant is entitled to judgment in her favor on plaintiff's First Amendment claims on the alternative basis of qualified immunity.

B.      RLUIPA Claims

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) states:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a).  "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion.  The burden of proving the existence of a substantial burden rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007); *see Living Water Church of God v. Charter Twp. of Meridian*, Nos. 05-2309, 06-1210, 2007 WL 4322157, at * 4 (6th Cir. Dec. 10, 2007); *see also Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002) ("RLUIPA . . . requires the complainant to show that his religious exercise was substantially burdened.").  At the summary judgment stage, the plaintiff must present evidence of a substantial burden, and "unreasoned say-so" does not suffice.  *See Gelford v. Frank*, No. 07-3638, 2008 WL 896792, at * 3 (7th Cir. Mar. 12, 2008).

RLUIPA does not define the phrase "substantial burden," and the Supreme Court "has not yet defined 'substantial burden' as it applies to RLUIPA."  *Living Water*, 2007 WL 4322157, at * 5.  In *Living Water*, the Sixth Circuit declined to establish a "bright line test" for determining a "substantial burden."  *Id.* at 8.  It held that the Supreme Court's Free Exercise jurisprudence provides the appropriate analytical framework.  *Id.* at 12.  The Sixth Circuit emphasized that in the Free Exercise context, the Supreme Court has made clear that the "substantial burden' hurdle is high."  *Id.* at 5.  "[A] 'substantial burden' is a difficult threshold to cross."  *Id.* at 7.  "'[A] substantial

burden must place more than an inconvenience on religious exercise.'" *Id.* at 10 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  A substantial burden is not established because the government's action makes the religious exercise more difficult or expensive. *Living Water*, 2007 WL 4322157, at * 10; *see Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813-14 (8th Cir. 2008).

Plaintiff has been incarcerated on his murder conviction since October 25, 1988.  He has been a practicing Wiccan since 1996.  (docket # 1, ¶¶ 33-35).  Plaintiff presented no evidence that the MDOC has ever permitted him to possess the sixteen items listed in his June 17, 2005 letter, or that his lack of the sixteen items impaired his ability to practice Wicca during that decade.  It is patent that plaintiff possessed alternative means of practicing his faith.  There are obvious safety and security reasons why Michigan's prisoners are not allowed to purchase or possess items such as "an individual ceremonial knife (an 'athame')."  (Plf. Brief at 6, docket # 54).  Restricting the items of personal property items that a prisoner may possess is a legitimate means of serving the compelling state interests of safety and security.  *See Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at * 2 (6th Cir. July 1, 1993); *Accord v. Brown*, No. 91-1865, 1992 WL 58975, at * 1 (6th Cir. Mar. 26, 1992).  Plaintiff has not offered any alternative that would fully accommodate his asserted rights at a *de minimis* cost to the legitimate state interests that gave rise to the restrictions specified in Policy Directive 05.03.150.  I find that no reasonable trier of fact could find in plaintiff's favor on the "substantial burden" component of his  RLUIPA claims against defendant Caldwell.

Assuming *arguendo* that plaintiff had established that Caldwell's failure to respond to plaintiff's June 17, 2005 letter had resulted in a "substantial burden" on plaintiff's exercise of his Wiccan faith, defendant Caldwell would nonetheless be entitled to judgment in her favor as a matter

of law because the rights that plaintiff claims under RLUIPA were not clearly established.  As shown in section IV(A) of this report and recommendation, plaintiff did not enjoy any constitutionally guaranteed right to a response to his correspondence.  Plaintiff argues that defendant Caldwell is not entitled to qualified immunity because the contours of his  rights secured by RLUIPA were clearly established.  (Plf. Brief at 19).  It is not sufficient for plaintiff to simply invoke the existence of the statute, because under the second prong of the qualified immunity analysis, "the right the official is alleged to have violated must have been 'clearly established' in a particularized, and hence more relevant sense."[19]  *Lyons*, 466 F.3d at 428.  Thus, the relevant inquiry is whether a reasonable chaplain in defendant Caldwell's position on June 17, 2005 would have understood that her failure to respond and accede to plaintiff's demands that she violate 05.03.150 by allowing plaintiff to purchase and possess the sixteen prohibited personal property items through the unauthorized vendor Azure Green, and scheduling group Wiccan services, would impose a substantial burden on the exercise of plaintiff's Wiccan faith in violation of plaintiff's clearly established federal statutory rights under RLUIPA.  The Sixth Circuit did not address the issue of what constitutes a "substantial burden" under RLUIPA until its December 2007 decision in  *Living Water*.  2007 WL 4322157, at * 8-12.  The law regarding what constituted a "substantial burden" was not clearly established in 2005.  I find that defendant is entitled to summary judgment on plaintiff's claims against her in her individual capacity for monetary damages on the alternative basis of qualified immunity.

---

[19]The qualified immunity issue is not whether RLUIPA was a statute of questionable constitutional validity from the date of its enactment through the Supreme Court's May 10, 2005 decision in *Cutter v. Wilkinson*.  *See Figel v. Overton*, No. 06-2199, 2008 WL 341458, at * 2 (6th Cir. Feb. 6, 2008).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendant Caldwell's motion for summary judgment (docket # 47) be granted.


Dated:  June 11, 2008          /s/  Joseph G. Scoville
                               United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).