UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MITCHELL D. PUGH, # 196686,            )
                                       )
                  Plaintiff,           )   Case No. 1:06-cv-138
                                       )
v.                                     )   Honorable Paul L. Maloney
                                       )
PATRICIA CARUSO, et al.,               )   **REPORT AND RECOMMENDATION**
                                       )
                  Defendants.          )
_____)

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a) for alleged violations of plaintiff's right to practice Wicca. The events giving rise to this lawsuit allegedly occurred in 2005 while plaintiff was an inmate at the St. Louis Correctional Facility (SLF). Plaintiff named six State of Michigan employees as defendants: Director of the Michigan Department of Corrections Patricia Caruso, Prison Affairs Manager James Armstrong, Warden Blaine Lafler, Classification Director Julius Mayfield, Grievance Coordinator Daniel Abrams, and Chaplain Carron Caldwell. Plaintiff sues defendants in their individual and official capacities and requests monetary damages and declaratory and injunctive relief.

On April 24, 2008, the court entered an order (docket # 62) dismissing all plaintiff's claims against defendants Caruso, Armstrong, Lafler, and Mayfield for lack of exhaustion required by 42 U.S.C. § 1997e(a), except plaintiff's challenge to a MDOC policy directive.

On June 11, 2008, I entered a report and recommendation (docket # 63) recommending that defendant Caldwell's motion for summary judgment (docket # 47) be granted. Plaintiff filed objections (docket # 64), which the court has not yet addressed. The objections clarify that he is not asserting any First Amendment claims against defendant Caldwell. (*Id.* at 2, ID # 551). Further, while the report and recommendation has been pending, the United States Court of Appeals for the Sixth Circuit has held that Eleventh Amendment immunity bars RLUIPA claims for damages against State employees in their official capacities. *See Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

Plaintiff filed this lawsuit on February 28, 2006. Defendant Daniel Abrams has never been served or otherwise appeared during the more than four years this case has been pending. I recommend that all plaintiff's claims against defendant Abrams be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.

The matter is now before me on a motion for summary judgment by defendants Caruso, Armstrong, Lafler, Mayfield, and Caldwell. (docket # 71). Plaintiff's response (docket # 86 at 3, ID # 661) states that he is not asserting any First Amendment claims. Because plaintiff has expressly abandoned all First Amendment claims, his only remaining claims are RLUIPA-based challenges to the application of MDOC's policy directive. For the reasons set forth herein, I recommend that all claims against defendants in their individual capacities be dismissed as noncognizable, and that all claims against defendants for damages in their official capacities be dismissed with prejudice as they are barred by Eleventh Amendment immunity. I further recommend that all plaintiff's claims for injunctive and declaratory relief against SLF defendants Lafler, Mayfield, and Caldwell be dismissed because they are moot. This leaves only claims against Caruso

and Armstrong in their official capacities for injunctive and declaratory relief. On analysis, I find that these RLUIPA claims cannot withstand a motion for summary judgment. I recommend that defendants' motion for summary judgment be granted and that a final judgment be entered in favor of defendants Caruso, Armstrong, Lafler, Mayfield, and Caldwell.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows

that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

**Facts**

The following facts are beyond genuine issue.[1] Plaintiff is in the custody of the Michigan Department of Corrections (MDOC), where he is serving life sentence on his second-degree murder conviction. (docket # 1 ¶ 33, ID # 28). He describes himself as a "sincere and devout" adherent to "the faith of Wicca known as the Gardnerian Tradition." (*Id.* at ¶¶ 35, 39, ID # 28).

---

[1] Plaintiff's complaint is verified under penalty of perjury. (docket # 1 at 23, ID # 39). The portions of plaintiff's pleading satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure are considered as his affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006).

1. Personal Property

Plaintiff states that "at a bare minimum" he needs the following paraphernalia for the meaningful exercise of Wicca:

1. various herbs and herbal teas;
2. various anointing oils;
3. various candles;
4. a scrying bowl and/or crystal ball;
5. an altar;
6. an altar cloth;
7. a chalice;
8. an athame;
9. a ceremonial cloak/robe;
10. an altar mixing/offering bowl;
11. an altar pentacle;
12. a bell;
13. a Book of Shadows;
14. an incense burner (censer);
15. various crystals; and
16. various types of incense.

(docket # 1, ¶ 47, ID # 28). Plaintiff was not able to possess the aforementioned items at the St. Louis Correctional Facility (SLF) in 2005 under MDOC's Policy Directive 05.03.150 (effective 5/24/04). He cannot possess these items under the current version of the policy directive, either. (Policy Directive 05.03.150 (effective 9/20/07) and Attachment A (effective 06/07/10).[2]

The four State employees at SLF that plaintiff named as defendants are Warden Lafler, Classification Director Mayfield, Grievance Coordinator Abrams and Chaplain Caldwell.

---

[2] A "book of shadows" is authorized by the MDOC, and its purchase and possession is controlled by Policy Directive 05.03.118 regarding prisoner mail. (Martin Aff. ¶ 13, ID # 613 and ¶¶ CC of Policy Directive 05.03.118, ID # 620). A "book of shadows" is generally described as a journal, blank book, or notebook in which a Wiccan records entries regarding his spiritual experiences. *See McAlister v. Livingston*, 348 F. App'x 923, 926 (5th Cir. 2009); *Meyer v. Wisconsin Dep't of Corr.*, No. 09-cv-312, 2010 WL 2486242, at * 1 (W.D. Wisc. June 16, 2010).

SLF's warden, classification director, grievance coordinator could not provide plaintiff with the items he desired. The SLF defendants lacked authority to establish or modify the MDOC's policy directive, which applies to all Michigan's prisons. The two defendants who work for the State of Michigan in Lansing are Director Caruso and Prison Affairs Manager Armstrong. Director Caruso, as head of the MDOC, has authority to modify its policies. There is no evidence that defendant Armstrong possesses such authority.

The MDOC allows Wiccan prisoners to possess the following religious personal property items: one deck of Tarot cards made from card stock, no longer than four by six inches, and one Celtic cross or pentagram, no larger than one and one-half inches by two inches, with a chain or string no longer than twenty-four inches. (Policy Directive 05.03.150 and Attachment A (effective 08/16/10). Food items, including herbs and herbal teas, are not allowed because it is difficult to control the content of liquids and foods. Some food items require being kept hot or cold to assure they are safe. No equipment is readily available to assure that food can be kept safe until consumed at a religious service. (Martin Aff. ¶ 7, ID # 612). Plants and flowers are not allowed. It is easy to conceal contraband in the soil of potted plants and to conceal contraband on or in flowers. To adequately inspect plants and flowers results in the destruction of the plants and flowers. (Martin Aff. ¶ 12, ID # 613). For security reasons, oils are not allowed for prison use. Oils can be used to slip out of restraints. Burning oil sticks to a person's skin, hair or clothing, resulting in very serious and potentially lethal burns. (Martin Aff. ¶ 8, ID # 612). Ceremonial robes are not allowed because robes provide places to conceal contraband. Most robes are worn loosely, making it easy to conceal contraband. Further, many Wiccans do not wear clothing under a robe, making it very easy for them to open the robe and expose themselves. (Martin Aff. ¶ 9, ID #s 612-13). Bells are

not allowed because they can be used to signal other prisoners or to sound a notice to commence disruptive behavior as well as to cause disruption within the housing unit. (Martin Aff. ¶ 10, ID # 613). Crystals and a crystal ball are not allowed. These items are generally used for divination or magic. Tarot cards are allowed for this purpose. (Martin Aff. ¶ 11, ID # 613).

        2.      *Buckland's Complete Book of Witchcraft*

On July 24, 2005, plaintiff requested a copy of *Buckland's Complete Book of Witchcraft*, which he could not possess because it was on the MDOC's restricted publications list. (docket # 1, ¶ 16, ID #s 21-22). The book remains a prohibited publication because of its bondage content. (Martin Aff. ¶ 14, ID # 613). The SLF defendants did not have authority to remove this book from the MDOC's restricted publications list.

        3.      Group Meetings

The MDOC did not recognize Wiccans as a group authorized to conduct group religious services/activities when this lawsuit was filed, but it has done so since 2007. (docket # 86-3, ID #s 691-92). Most Wiccans practice the solitary path of Wicca. (Martin Aff. ¶ 5, ID # 612). Some of them however, gather with other Wiccans to celebrate one or more of the eight annual Sabbats. (Matrin Aff. ¶ 5, ID #612; Policy Directive 05.03.150 and Attachment A (effective 06/07/10)). The Sabbats are based on solar cycles and are the eight major Wiccan holidays. (docket # 1, Ex. E at 4-5, docket # 86, Ex B at 2, 9, 10, Ex. D at 79, ID #s 696, 703-04, 750). Some Wiccans practice ceremonies based on phases of the moon known as Esbats. (docket # 1, ¶ 38 and Ex. E at 4-5, ID #s 28, 46-47; docket # 86 Ex. B at 11-12, ID #s 705-06).

The MDOC allows the following items during the eight congregant Sabbats:

(1) water to mark a circle;

(2) an altar (a table or desk can be used for an altar);

(3) an altar cloth;

(4) a picture of a pentacle for display on the altar;

(5) a bowl or chalice to be placed on the altar;

(6) one stick of incense and an appropriate holder for the incense;

(7) candles (not more than 10) which can be placed in a circle or placed to form the points of the pentacle; and

(8) and a ceremonial dagger called an Athame (made of cardboard or poster material only).

(Martin Aff. ¶ 6, ID # 612). It is undisputed that prison guards are present during Sabbats to monitor the use of the above-referenced items.[3]

## **Discussion**

1.    <u>Defendant Abrams</u>

I recommend that all plaintiff's claims against defendant Daniel Abrams be dismissed for failure to achieve service of process during the years this lawsuit has been pending. Abrams has never been served with process or otherwise appeared. Plaintiff has had notice of this defect for more than two years. (docket # 56 at 1 n.1, ID # 472). Accordingly, I recommend that all plaintiff's claims against defendant Abrams be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. This report and recommendation serves as plaintiff's notice of impending

---

[3] Plf. Brief at 30, ID # 688.

dismissal. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Reynosa v. Schultz*, 282 F. App'x 386, 393-94 (6th Cir. 2008).

    2.    <u>Mootness</u>

Plaintiff is an inmate at the Pine River Correctional Facility. (docket # 88). His claims for declaratory and injunctive relief against SLF defendants Lafler, Mayfield, and Caldwell are moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Colvin v. Caruso*, 605 F.3d at 289.

    3.    <u>Eleventh Amendment Immunity</u>

Defendants are entitled to dismissal of all plaintiff's RLUIPA claims for damages against them in their official capacities. These claims are clearly barred by Eleventh Amendment immunity. *See Cardinal v. Metrish*, 564 F.3d at 801; *see also Colvin v. Caruso*, 605 F.3d at 289.

    4.    <u>Claims for Damages against Defendants in Their Individual Capacities</u>

RLUIPA does not provide a cause of action for damages against defendants in their individual capacities. *See Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 187-89 (4th Cir. 2009); *Sossamon v. Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272-74 (11th Cir. 2007). I recommend that all plaintiff's claims for damages against defendants in their individual capacities for monetary damages be denied.

5. Claims for Declaratory and Injunctive Relief

Plaintiff seeks a declaratory judgment and prospective injunctive relief against defendants Caruso and Armstrong in their official capacities.[4] The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). Plaintiff cannot show a substantial burden, and defendants have met their obligation to show means narrowly tailored to meet a compelling state interest.

A. Substantial Burden

"The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial burden rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir.2007); *see Barhite v. Caruso*, No. 09-1312, 2010 WL 1957493, at * 3 (6th Cir. May 14, 2010)("RLUIPA [] requires an inmate to show that his or her religious exercise [is] substantially burdened."); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733 (6th Cir. 2007). At the summary judgment stage, the plaintiff must present evidence of a substantial burden, and "unreasoned say-so" does not suffice. *See Gelford v. Frank*, 310 F. App'x 887, 889 (7th Cir. 2008).

---

[4] There is no right to a jury trial under RLUIPA for such equitable remedies. *See Thunderhorse v. Pierce*, 364 F. App'x 141, 148 (5th Cir. 2010).

RLUIPA does not define the phrase "substantial burden," and the Supreme Court "has not yet defined 'substantial burden' as it applies to RLUIPA." *Living Water*, 258 F. App'x at 733. In *Living Water*, the Sixth Circuit declined to establish a "bright line test" for determining a "substantial burden." *Id.* at 737. It held that the Supreme Court's Free Exercise jurisprudence provides the appropriate analytical framework. *Id*. at 733. The Sixth Circuit emphasized that in the Free Exercise context, the Supreme Court has made clear that the "'substantial burden' hurdle is high." *Id.* at 734. "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. A substantial burden must place more than an inconvenience on religious exercise. *Id.* at 739; *see Kimbrel v. Caruso*, No. 1:08-cv-1081, 2010 WL 1417746, at * 7 (W.D. Mich. Feb. 2, 2010)("RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word 'substantial.'"). A substantial burden is not established because the government's action makes the religious exercise more difficult or expensive. *Living Water*, 258 F. App'x at 739; *see Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813-14 (8th Cir. 2008).

Plaintiff possesses alternative means of practicing his faith. He has access to the personal property items permitted under the MDOC's policy. (Plf. Brief at 13, 23, ID #s 671, 681). He is allowed to participate in the eight annual congregant Sabbats while he is under the direct supervision of guards. During such gatherings, he has access to the permitted paraphernalia. (docket # 86, Plf. Brief at 8, 30, ID #s 666, 688). Plaintiff now argues that the eight Sabatts are not adequate to meet his needs. For example, he states that the paper athame (dagger) permitted during Sabbats is inadequate "because it cannot be charged with energy." (Plf. Brief at 16, ID # 674)(citing Ex. D at 80, ID # 751). The document cited by plaintiff does not suggest that a paper athame is inadequate,

or that a metal dagger is a necessary implement to this ceremony. Further, the safety and security reasons for keeping a metal dagger out of the hands of prisoners, especially convicted murderers like plaintiff, are too patent to warrant further discussion. The limitations on items available during congregate meetings of Wiccans do not substantially burden plaintiff's religious exercise. Plaintiff would like to have available for his private and unsupervised use all of the otherwise prohibited items that are available to him during supervised congregate meetings. Depriving plaintiff of private use of these items is not a substantial burden on his religious exercise. *See Gelford v. Frank*, 310 F. App'x at 889; *Kaiser v. Shipman*, No. 3:07-cv-229, 2009 WL 2423141, at * 7 (M.D. Fla. Aug. 4, 2009); *Hamlin v. Smith*, No. 07-cv-1058, 2010 WL 2740119, at * 9-10 (D. Colo. July 12, 2010); *Willard v. Hobbs*, No. 2:08-cv-24, 2009 WL 2497637, at * 10 (E.D. Ark. Aug. 12, 2009).

Plaintiff argues that the eight congregate meetings are not enough.[5] He argues that in addition to the eight annual Sabbats, the MDOC should also authorize congregate services for "Esbats," which he states are based on "four phases of the moon." (Plf. Brief at 9, ID # 667). Elsewhere he indicates that Wiccans "participate in communion ceremonies on each full and new moon, known as 'Esbats.'" (docket # 1, ¶ 38, ID # 28). Thus, plaintiff is far from clear whether he is seeking roughly twenty-four more congregate meetings per year (based on full and new moons)

---

[5]The problem of prisoners conducting gang activities under the guise of group religious services is well documented. *See Marquart v. McGinnis*, 22 F. App'x 383 (6th Cir. 2001); *see also Jova v. Smith*, 582 F.3d 410, 416 (2d Cir. 2009)(noting the "delicate balance" between respecting inmate demands to participate in congregational activities and "ensuring that those activities do not serve as proxies for gang recruitment or organization"); *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008)(prison gang using purportedly religious services as a "forum to organize disruption"); *Holley v. Johnson*, No. 7:08-cv-629, 2010 WL 2640328, at * 6 (W.D. Va. June 30, 2010); *Rouser v. Rutherford*, No. Civ S-07-1107, 2010 WL 2629766, at * 4 (E.D. Cal. June 29, 2010)(Wicca organization used as a cover to smuggle narcotics into prison; the use force and violence to collect drug debts eventually resulted in a prison riot when Wiccan prisoners sought to extort a drug debt from members of a rival gang).

or forty-eight (based on four phases). Plaintiff has not shown that the absence of these additional opportunities for group services[6] imposes a substantial burden on his religious exercise.

        B.      Least Restrictive Means of Furthering a Compelling State Interests

The Supreme Court's *Cutter v. Wilkinson* decision provided guidance to lower courts regarding the application of RLUIPA's statutory standards:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests. *In [Estate of Thornton v.] Caldor, [Inc.*, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985)], the Court struck down a Connecticut law that "arm[ed] Sabbath observers with an absolute and unqualified right not to work on whatever day they designate[d] as their Sabbath." 472 U.S., at 709, 105 S.Ct. 2914, 86 L.Ed.2d 557. We held the law invalid under the Establishment Clause because it "unyielding[ly] weigh[ted]" the interests of Sabbatarians "over all other interests." *Id.*, at 710, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557.
>
> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, *see supra*, at 2118, "[c]ontext matters" in the application

---

[6]Plaintiff has not supplied any evidence regarding when and how he proposes to perform group Esbats. Not surprisingly, other prisoners have been unsuccessful when they have requested injunctions compelling prison officials to allow them to conduct group meetings outside their cells after dark. *See Kaiser v. Shipman*, No. 3:07-cv-299, 2009 WL 2423141, at * 9 (N.D. Fla. Aug. 4, 2009)(Prison staffing levels are lower at night and "the risk of escape and difficulties associated with recapture are also significantly increased."); *Hendrickson v. Caruso*, No. 1:07-cv-304, 2008 WL 623788, at * 3 (W.D. Mich. Mar. 4, 2008)(Performing rituals at night and in the dark is "fundamentally incompatible with plaintiff's status as a prisoner in state custody serving a sentence on a felony conviction."); *accord Marsh v. Granholm*, 2:05-cv-134, 2006 WL 2439760, at * 10 (W.D. Mich. Aug. 22, 2006)(rejecting Wiccan prisoner's claims that under RLUIPA he was entitled privacy in a natural setting and female companionship to help him celebrate life through heterosexual union and procreation). Plaintiff's brief suggests that he envisions a gathering of prisoners wearing nothing other than ceremonial robes. (Plf. Brief at 17, ID # 675). The reasons for not allowing such gatherings are numerous and obvious. *See Fowler v. Crawford*, 534 F.3d at 939 ("Prison officials need not endure assaults, drug indulgence, or sexual improprieties before implementing policies designed to prevent such activities.").

of that standard. *See Grutter v. Bollinger*, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003). Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. *See, e.g.*, 139 Cong. Rec. 26190 (1993) (remarks of Sen. Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).

(1). Compelling State Interests

The challenged MDOC policy directive serves compelling state interests. Prison security is not only a legitimate governmental interest, it is recognized as a compelling governmental interest. *See Hoevenaar v. Lazaroff*, 422 F.3d 366, 368 (6th Cir. 2005); *see also Slingson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009)("Prison safety and security are compelling government interests" and "RULIPA does not elevate accommodation of religious observances over an institution's need to maintain order and security."); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) ("Institutional security is the most compelling governmental interest in a prison setting, and security is particularly important in dealing with group activities because of the potential for riots and the extensive damage resulting therefrom.")(internal quotations and citations omitted). Limiting the personal property that prisoners are allowed to possess serves compelling State interests. *See e.g.*, *Burriola v. Nevada*, No. 3:07-cv-102, 2010 WL 2326118, at * 8 (D. Nev. Feb. 8, 2010)(each additional item of personal property increases the burden on guards to inventory the items before prisoners are transferred, increases the risk or fire, and increases the risk that an item will be used as a weapon against a guard); *Cryer v. Clark*, No. 09-10238, 2009 WL 6345768, at * 7 (D. Mass. July 9, 2009)(limiting a prisoner's personal property serves the compelling interests of reducing the

number of places where prisoners can hide contraband, simplifies cell searches and property inventories, and limits the adverse impact of such items have on the prison's management, security, and resources).

### (2). Least Restrictive Means

Defendants did not submit evidence directed to the least restrictive means issue. It was not necessary to do here because plaintiff did not satisfy the threshold "substantial burden." Thus, for present purposes, it is appropriate to simply note that this court has recently rejected a series of virtually identical claims brought by other Wiccan prisoners and has held that the challenged MDOC policies are the least restrictive means of furthering compelling State interests. *See Smith v. Stoley*, No. 1:08-cv-693, 2009 WL 3233825 (W.D. Mich. Sept. 30, 2009); *Hall v. Caruso*, No. 1:07-cv-1161, 2009 WL 3996504 (W.D. Mich. Sept 9, 2009); *Marsh v. Ganholm*, No. 2:05-cv-134, 2007 WL 2683216, at * 4 (W.D. Mich. Sept. 7, 2007), *aff'd*, No. 07-2450 (6th Cir. July 31, 2008). For example, maintenance of *Buckland's Complete Book of Witchcraft* on the MDOC's restricted publications list is the least restrictive means of furthering compelling State interests:

> *Buckland's Complete [B]ook of Witchcraft* is on the restricted publication list because it depicts a photograph of a naked woman, blindfolded with her hands tied behind her back. The rope tying her hands also encircles her neck. The MDOC considers that inappropriate content for prisoners because it depicts potential criminal activity and threatens security in the prison by demonstrating bondage and possible strangulation. In the opinion of the undersigned, plaintiff's religious rights are clearly being accommodated by the MDOC and those minimal restrictions imposed by the MDOC on the Wiccan religion are served by a compelling state interest. Plaintiff cannot overcome the necessary interests of the MDOC to preserve security in the prison.

*Marsh v. Ganholm*, 2007 WL 2683216, at * 4. The MDOC's property restrictions likewise passed review under RLUIPA standards. Oils are not allowed because prisoners "can use oils to help them

slip out of restraints. Oils can be set aflame and thrown on persons. The burning oil sticks to a person's skin, hair and clothing, resulting in very serious and potentially lethal burns." *Id.* Oils can be used to mask the smell of marijuana smoke. *Id.* Ceremonial robes are not allowed because they provide places to conceal contraband and prisoners can misuse robes by wearing no clothes underneath making it very easy for them to expose themselves. *Id.* Bells are not allowed because they can be used to signal other prisoners or to sound a notice to commence disruptive behavior." *Id.* "Crystals and crystal balls are not allowed because the glass or crystals can be broken and used as weapons." *Id.* Plants and flowers are not allowed because it is easy to conceal contraband in the soil of potted plant and to conceal contraband on or in flowers. An adequate search of plants or flowers results in their destruction. *Id.* Herbs and herbal teas are not allowed because it is difficult to control the content of liquids and foods. Some food items must be kept hot or cold to remain safe. No equipment is readily available to assure that food items can be kept safe until consumed. *Id.*; *see Marsh v. Granholm*, 2007 WL 2683216, at * 3. Safety and security demand that flammable items such as candles and incense be kept out of the hands of prisoners because they can be used to damage State property, facilitate riots, and be used as weapons against guards or other prisoners. *See Fowler v. Crawford*, 534 F.3d at 939; *Hodgson v. Fabian*, No. 08-5120, 2009 WL 2972862, at * 12 (D. Minn. Sept. 10, 2009).

**Recommended Disposition**

For the foregoing reasons, I recommend that all plaintiff's claims against defendant Daniel Abrams be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.

I further recommend that all claims against defendants in their individual capacities be dismissed as noncognizable, and that all claims against defendants for damages in their official capacities be dismissed with prejudice as they are barred by Eleventh Amendment immunity. Plaintiff's claims for injunctive and declaratory relief against SLF defendants Lafler, Mayfield, and Caldwell should be dismissed because they are moot. The remaining claims for injunctive and declaratory relief under RLUIPA do not withstand scrutiny under the summary judgment standard. Accordingly, I recommend that defendants' motion for summary judgment be granted and that a final judgment be entered in favor of defendants Caruso, Armstrong, Lafler, Mayfield, and Caldwell.


Dated:   August 25, 2010            /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).